**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Valentina Mindirgasvova | Not Present |

**Proceedings:** DEFENDANT'S MOTION FOR ENTRY OF DEFAULT JUDGMENT (Dkt. 14, filed May 15, 2018)

## I.   INTRODUCTION

On February 27, 2018, plaintiffs GCIU–Employer Retirement Fund (the "Fund") and Board of Trustees of the GCIU–Employer Retirement Fund (the "Board") brought this action against defendant ABCO Printing d/b/a RP Enterprises, LLC ("RP Enterprises") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 et seq., and Section 515 of ERISA, 29 U.S.C. § 1145. Dkt. 1 ("Compl."). Plaintiffs allege that defendant is liable for withdrawals from and underpaid benefit contributions to a multiemployer pension plan, and that defendant failed to produce books and records for purposes of conducting an audit. Id.

On March 1, 2018, plaintiffs served the summons and complaint on defendant. Dkt. 8. Defendant has failed to file an answer or otherwise respond. On April 9, 2018, the Clerk entered default. Dkt. 12. On May 15, 2018, plaintiffs filed the instant motion for default judgment in addition to a supporting declaration and several exhibits. Dkt. 14 ("Mot."). The Court held a hearing on June 18, 2018. Having carefully reviewed the motion and supporting documentation, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

## II. BACKGROUND

The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3). Compl. ¶ 5. The Board is comprised of the named fiduciaries of the Fund within the meaning of 29 U.S.C. § 1102(a), and is the plan sponsor of the Fund within the meaning of 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10). Id. ¶ 6. The Fund is authorized to bring this action pursuant to the Fund's Trust Agreement. Compl., Ex. 1 ("Trust Agreement"). As a named fiduciary, the Board is authorized to bring this action on behalf of the Fund, its participants, and beneficiaries pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1). Id. ¶ 7.

Defendant is a limited liability company organized under the laws of the State of New Jersey with a revoked status. Id. ¶ 9. During the time period relevant to this action, defendant was an "employer" as defined by 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by the Labor Management Relations Act, 29 U.S.C. § 185(a). Id. ¶ 10. As a result of a collective bargaining agreement ("CBA") with GCC/IBT Local 612M, signed May 28, 2010, defendant agreed to contribute to the Fund on behalf of certain employees. Compl. ¶ 12, Ex. 2; Declaration of Judi Knore ("Knore Decl.") ¶ 24.[1] Pursuant to the CBA, defendant also agreed to be bound by the terms and conditions of the Fund's Trust Agreement. Compl. ¶ 27; Trust Agreement.

### 1. Withdrawal Liability

Defendant ceased participating in the plan and making contributions to the Fund in 2013. Compl. ¶ 13. The Fund therefore determined that defendant effectuated a "complete withdrawal" from the Fund pursuant to 29 U.S.C. § 1383. Mot. at 4. Defendant also experienced three partial withdrawals due to a 70 percent contribution decline, triggered in 2010, 2011, and 2012, pursuant to 29 U.S.C. § 1385(a)(1). Compl. ¶ 14. Plaintiffs allege that, as a result, defendant was subject to withdrawal liability under the MPPAA. Id. ¶ 16.

On May 18, 2017, plaintiffs sent defendant a notice and demand letter, pursuant to 29 U.S.C. §§ 1382(2) and 1399(b)(1), which plaintiff received on July 3, 2017. Id. ¶ 15.

---

[1] Judi Knore is the third-party administrator for plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

The letter included an actuarial calculation of defendant's partial withdrawal liability in the amount of $891,318, and complete withdrawal liability in the amount of $170,780, totaling $1,062,098, in addition to providing defendant with a payment schedule in accordance with 29 U.S.C. § 1399(c). Id. ¶ 16–17, 23, Ex. 3. Plaintiffs allege that defendant failed to make payments pursuant to the four payment schedules as required by 29 U.S.C. § 1399(c)(2). Id. ¶ 18.

On September 12, 2017, in accordance with 29 U.S.C § 1399(c)(5), plaintiffs sent a letter notifying defendant that it had failed to pay, and informing defendant that it had 60 days to cure the delinquencies prior to default. Id. ¶ 19. Plaintiffs allege that defendant failed to cure within the allotted time and thus is in default within the meaning of 29 U.S.C. § 1401(b)(1). Id. ¶ 22. The letter also advised defendant that it had 90 days to request a review or object to the assessments pursuant to 29 U.S.C. § 1399(b)(2)(A). Id. ¶ 20. Defendant did not initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1) and the time to initiate arbitration has consequently expired. Id. ¶ 21, Ex. 3.

### 2. Audit Requirements

Pursuant to the CBA and Trust Agreement, defendant was required to report on a monthly basis the hours worked by all of its employees performing bargaining unit work, to pay contributions to the Fund accordingly, and to permit plaintiffs to examine and audit its books and records relating to hours worked by all employees. Compl. ¶ 27, Exs. 1–2; Knore Decl. ¶ 25. Plaintiffs requested an audit covering the period of April 1, 2010 through June 30, 2013 to determine whether defendant had accurately reported the number of hours worked by its employees. Compl. ¶ 29. Plaintiffs allege that defendant failed to allow the Fund to conduct this audit. Knore Decl. ¶ 29.

### 3. Minimum Annual Contributions

Pursuant to 29 U.S.C. § 1145, the CBA, and the Trust Agreement, defendant is obligated to remit contributions to the Fund. Compl. ¶ 33. The Fund's Rehabilitation Plan obligates participating employers to pay a minimum annual contribution amount—no less than an employer's annual contributions from September 1, 2008 through August 31, 2009. Id. ¶ 34, Ex. 5. Defendant's contributions for that period totaled $5,626, which is therefore defendant's minimum annual contribution. Id. ¶ 35. Because defendant only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

participated in the Fund for six months in 2013, the pro-rated minimum contribution requirement for 2013 was $2,813. Id. ¶ 36. Defendant contributed a total of $835.63 to the Fund in 2013, underpaying by $1977.37. Id. ¶ 38. Pursuant to the Trust Agreement and 29 U.S.C. § 1132(g)(2), defendant is liable for (1) the amount of contributions due, plus (2) interest on the unpaid and untimely paid Fund contributions, at the rate of ten percent per annum, (3) liquidated damages equal to twenty percent of those delinquent contributions, and (4) costs and fees of collection and attorneys' fees. Id. ¶ 40.

### III. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55.

As a general rule, cases should be decided on the merits as opposed to by default, and, therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Judge William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 6:11 (The Rutter Group 2015) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005); see also Sony Music Entertainment, Inc. v. Elias, No. 03-cv-6387-DT, 2004 WL 141959, *3 (C.D. Cal. Jan. 20, 2004).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); see also Elektra, 226 F.R.D. at 392. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

## IV. DISCUSSION

Plaintiffs seek default judgement against defendant for withdrawal liability, unpaid contributions, accrued interest, liquidated damages, attorneys' fees and costs, and for injunctive relief compelling defendant to produce its books and records covering the period from April 1, 2010 through June 20, 2013. Dkt. 14-2.

### 1. Application of the Eitel Factors

#### a. Risk of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471–72. As defendant has failed to pay both its withdrawal liability and the balance on its minimum annual contribution, plaintiffs lack any recourse to recovery save default judgment. PepsiCo, 238 F. Supp. 2d. at 1177. Defendant's failure to compensate the Fund for its withdrawal liability and unpaid contributions will unfairly burden other participating employers with increased payments and potential reductions in benefits. See Carpenters Pension Tr. Fund for N. Cal. v. Underground Const. Co, Inc., 31 F.3d 776, 778 (9th Cir. 1994); see also Bd. of Trs. of the Clerks v. Piedmont Lumber & Mill Co., No. C 10–1757 MEJ, 2010 WL 4922677, at *4 (N.D. Cal. Nov. 29, 2010) (finding that plaintiffs would be prejudiced in the absence of default judgment because if the "contributions are not covered, future benefits for Plan participants and their beneficiaries may be put at risk if the Plan is underfunded."). Accordingly, this factor weighs in favor of entering default judgment.

#### b. Sufficiency of the Complaint and the Likelihood of Success on the Merits

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). These factors assess the substantive merit of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation marks omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (noting that the issue is whether the allegations in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

the pleading state a claim upon which plaintiff can recover). Here, plaintiffs assert claims for (1) withdrawal liability and associated interest pursuant to 29 U.S.C. § 1381, (2) injunctive relief in the form of an order compelling defendant to produce its books and records, and (3) unpaid contributions and interest pursuant to 29 U.S.C. § 1145.

As an initial matter, plaintiffs' claims are timely. Claims for delinquent contributions and injunctive relief may be brought up to six years after the date on which the cause of action arose. See 29 U.S.C. §§ 1451(a)(1) and 1451(f). Here, defendant's unpaid contributions became due on January 1, 2014, and plaintiffs requested that defendants submit to an audit on or after June 30, 2013. See Knore Decl. ¶¶ 27–28, 37. Pursuant to 29 U.S.C. § 1451(b), actions for withdrawal liability are treated the same as actions for delinquent payments, and the statute of limitations begins running once an employer fails to make any withdrawal liability payment within the time prescribed. See Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California, 522 U.S. 192, 202 (1997) (holding that "a plan's interest in receiving withdrawal liability does not ripen into a cause of action triggering the limitations period until . . . the trustees . . . demand payment pursuant to § 1399(b)(1) [and] the employer . . . default[s] on an installment due and payable under the trustees' schedule."). Here, defendant defaulted on its withdrawal liability on November 11, 2017, 60 days after being notified by plaintiffs that it had failed to pay according to plaintiffs' specified schedule. Compl. ¶ 19. Accordingly, plaintiffs' claims were brought within the limitations period.

### 1. MPPAA Withdrawal Liability

Under the MPPAA, an employer who partially or completely withdraws from a defined benefits plan is liable for a proportionate share of the plan's unfunded vested benefits. See 29 U.S.C. § 1381. A partial withdrawal occurs when there is a 70 percent contribution decline for a given plan year. Id. § 1385(b)(1)(A). A complete withdrawal occurs when "an employer permanently ceases to have an obligation to contribute to the plan." Id. § 1383(a)(1). In the event of either type of withdrawal, the plan sponsor must "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." Id. § 1382. No later than 90 days after the plan assesses liability, the employer may ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability. Id. § 1399(b)(2)(A). "Any dispute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

between an employer and the plan sponsor of a multiemployer plan" over withdrawal liability "shall be resolved through arbitration." Id. § 1401(a)(1). If an employer fails to demand arbitration within the time period prescribed by the statute, the assessment becomes "due and owing" on the schedule provided by the plan sponsor. Id. § 1404(b)(1). If the employer defaults on its obligations, the plan sponsor is entitled to obtain "immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." Id. § 1399(c)(5).

Here, plaintiffs have sufficiently alleged that defendant incurred withdrawal liability based on both its partial and complete withdrawals from the Plan and is currently in default. Comp. ¶¶ 13–14, 22. Defendant signed a CBA by which it agreed to make contributions to the Fund on behalf of certain employees and to be bound by the terms and conditions of the Trust Agreement. Id. ¶ 15, Exs. 1 & 2. Plaintiffs notified defendant of its withdrawal liabilities via letter and explained the actuarial calculations used to arrive at the liability assessments totaling $1,062,098. Id., Ex. 3. Because defendant neither contested plaintiffs' determination of liability nor sought arbitration in the time period prescribed by statute, it entered into "default" within the meaning of 29 U.S.C. § 1399(c)(5). Id. ¶¶ 20–22. Thus, plaintiffs' complaint is well-pleaded as to defendant's withdrawal liability.

### 2. Audit Injunction

A trust agreement may provide trustees and their representatives broad rights to assist trustees in conducting an audit. Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1493–94 (9th Cir. 1990). "[T]he right of employee benefit plaintiffs to enforce a power to audit pursuant to a trust agreement is well established." Carpenters Sw. Admin. Corp. v. Comstock Concrete LLC, No. 2:17-cv-03835 CAS (ASx), 2017 WL 4022392, at *5 (C.D. Cal. Sept. 11, 2017) (citing Central States Pension Fund v. Central Transport, 472 U.S. 559, 581–82 (1985)). Here, the Trust Agreement provides that the Board "shall have the authority to audit the payroll books and records of a participating employer . . . as they deem necessary in the administration of the Trust Fund." Trust Agreement at 27. As defendant failed to produce its books and records, it is now in breach of its obligations under the Trust Agreement. Knore Decl. ¶¶ 27–29. Therefore, plaintiffs' request for injunctive relief is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

### 3. Underpaid Minimum Annual Contributions

ERISA provides a federal cause of action against employers who fail to make timely contributions to employee benefit plans and allows plan fiduciaries to enforce obligations created under a CBA. See 29 U.S.C. § 1145; see also Trs. of the Screen Actors Guild–Producers Pension & Health Plaintiffs v. NYCA, Inc., 572 F.3d 771, 776 (9th Cir. 2009). To state such a claim, plaintiffs must allege that (1) the plans are multiemployer plans within the meaning of 29 U.S.C. § 1002(37); (2) the CBA obligated the employer to make employee benefit contributions; and (3) the employer failed to make the contribution payments. Bd. of Trustees of U.A. Local No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc., No. C 12-05111 JSW, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013). Here, plaintiffs have sufficiently alleged that (1) the Fund is a multiemployer plan; (2) by signing the CBA and Trust Agreement, defendant was obligated to make minimum annual contributions to the Fund; and (3) defendant failed to remit minimum contributions for the period of January 1, 2013 through December 31, 2013. See Compl. ¶¶ 5, 34, 36, Exs. 1 & 2. Therefore, this factor weighs in favor of plaintiffs.

### c. Sum of Money at Stake in the Action

Pursuant to the fourth Eitel factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." PepsiCo, 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471–72. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." United States v. Broaster Kitchen, Inc., No. 2:14-cv-09421-MMM-PJW, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); see also Walters v. Statewide Concrete Barrier, Inc., No. 3:04-cv-02559-JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.").

Here, plaintiffs request a total of $1,134,703.53 in damages, interest, costs, and attorneys' fees, which is comprised of (1) $1,062,098 in withdrawal liability, (2) $1,977.37 in delinquent minimum annual contributions, (3) $38,486.42 in prejudgment interest on withdrawal liability, (4) $864.44 in interest on delinquent contributions, (5) $395.48 in liquidated damages, (6) $25,676.44 in attorneys' fees, and (7) $583 in costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

Knore Decl. ¶¶ 22, 40–41. This amount is authorized pursuant to the terms of the Trust Agreement, as well as by 29 U.S.C § 1132(g)(2)(D) and Local Rule 55–3. Accordingly, these damages are "consistent with the terms of the contract and otherwise appropriate." Landstar Ranger, Inc. v. Parth Enters, Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). This factor consequently weighs in favor of entering default judgment.

### d. Possibility of a Dispute Concerning a Material Fact

The fifth Eitel factor considers the possibility that material facts are disputed. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. The issues in this case are straightforward: whether defendant withdrew from the Fund, whether defendant underpaid its minimum annual contributions, and whether plaintiffs properly notified defendant. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177. Having defaulted, defendant has therefore admitted all factual allegations contained in the complaint, and hence no genuine dispute of material facts exists that would preclude granting the motion. See Elektra, 226 F.R.D. at 393. Accordingly, this factor weighs in favor of entering default judgment.

### e. Possibility of Excusable Neglect

The sixth Eitel factor considers whether the defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. The possibility of excusable neglect here is remote. Defendant was served on March 3, 2018. Dkt. 8. Default was entered on April 9, 2018. Dkt. 12. Defendant has neither responded to this action nor attempted to have default set aside. Where a defendant "[is] properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," there is little possibility of excusable neglect. Shanghai Automation Instrument Co. Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Accordingly, this factor weighs in favor of entry of default judgment.

### f. Public Policy Favoring Decisions on the Merits

Under the seventh Eitel factor, the Court takes into account the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1472. However, "this preference,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

standing alone, is not dispositive," and a party's failure to answer or appear makes a decision on the merits impractical, if not impossible. PepsiCo, 238 F. Supp. 2d at 1177 (internal citation omitted). Rule 55(a) also permits a court to decide a case before the merits are heard if a defendant fails to defend the suit. Here, defendant's failure to answer or appear makes a decision on the merits impractical. Thus, the seventh Eitel factor does not preclude the entry of default judgment.

### g. Conclusion Regarding Eitel Factors

Apart from the policy favoring decisions on the merits, all of the Eitel factors weigh in favor of the entry of default judgment, including the merits of plaintiffs' claims. See Federal Nat. Mortg. Ass'n v. George, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors.") (citation omitted). Consequently, it is appropriate to grant plaintiffs' motion for default judgment against defendant.

### 2. Relief Sought by Plaintiffs

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., 826 F.2d at 917–18 (internal quotation marks omitted). The "[p]laintiff has the burden of proving damages through testimony or written . . . declarations." Board of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2006). Here, plaintiffs seek a substantial amount of damages, but have provided detailed declarations and supporting exhibits to prove up that amount.

### a. MPPAA Withdrawal Liability

Plaintiffs seek a total of $1,062,098 in withdrawal liability. Knore Decl. ¶ 9. As defined by 29 U.S.C. § 1381(b)(1), an employer's withdrawal liability is the amount of its proportionate share of a multiemployer pension plan's unfunded vested benefits, subject to certain adjustments and a *de minimis* reduction as outlined in 29 U.S.C. § 1389. Withdrawal liability assessments are calculated based on statutory formulas set forth in 29 U.S.C. § 1386 (for complete withdrawals) and § 1391 (for partial withdrawals). A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

complete withdrawal occurs whenever a participating employer permanently ceases to have an obligation to contribute under the plan. 29 U.S.C. § 1383(a)(1). A partial withdrawal occurs when there is a 70 percent contribution decline for any plan year. Id. § 1385(a)(1). A 70 percent contribution decline occurs for a plan year if, during that year and the two years immediately preceding (the so-called "three-year testing period"), the employer's contributions do not exceed 30 percent of its contributions for the high base year. Id. §§ 1385(b)(1)(A) and 1385(b)(1)(B)(i). The contribution for the high base year is the average of the two high contribution years within the five plan years immediately preceding the beginning of the three-year testing period. Id. § 1385(b)(1)(B)(ii).

Here, plaintiffs determined that defendant completely withdrew from the Fund in 2013, when it ceased participating in the plan, and partially withdrew in three consecutive years (2012 to 2014) due to a 70 percent contribution decline triggered in 2010, 2011, and 2012. Knore Decl. ¶ 10. Plaintiffs calculated defendant's complete withdrawal liability as $170,780. Compl. ¶ 16, Ex. 3. To do so, plaintiffs' actuary used the "Rolling-5 Method" as specified in the Fund's Withdrawal Liability Procedures and permitted by 29 U.S.C. § 1391(c)(3). Knore Decl., Ex. 3. Plaintiffs calculated defendant's partial withdrawal liability as (1) $424,112 for the year 2012, (2) $72,963 for the year 2013, and (3) $394,243 for the year 2014. Compl. ¶ 16, Ex. 3. Plaintiffs provided defendants with payment schedules for each of the assessments, as required by 29 U.S.C. § 1399. Had defendant made payments according to these schedules, its partial withdrawal liability assessment for 2012 and 2014 would have been capped after the first twenty annual payments, pursuant to 29 U.S.C. § 1399(c)(1)(A)(i).[2] However, defendant failed to make any payments and defaulted, and so is now obligated to pay the full amount pursuant to 29 U.S.C. § 1399(c)(5). Knore Decl., Ex. 3. Plaintiffs have provided copies of the relevant agreements, company procedures, and actuarial calculations used to determine the above figures. The Court finds this documentation sufficient to prove up the amount requested.

---

[2] This cap did not apply to the 2013 partial withdrawal liability assessment, nor the 2013 complete withdrawal liability assessment, because the schedule of payments for each did not exceed twenty years.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

### b.     Audit Injunction

Plaintiffs seek injunctive relief in the form of an order compelling defendant to submit to an audit for the period of April 1, 2010 through June 30, 2013, so that plaintiffs can ensure defendant's contributions were made in accordance with the requirements of the CBA and the Trust Agreement. Knore Decl. ¶ 24; Trust Agreement; Compl., Ex. 2. As previously mentioned, "the right of employee benefit plaintiffs to enforce a power to audit pursuant to a trust agreement is well established." Carpenters Sw. Admin. Corp. v. Comstock Concrete LLC, No. 2:17-cv-03835 CAS (ASx), 2017 WL 4022392, at *5 (C.D. Cal. Sept. 11, 2017). The Trust Agreement also obligates defendant to permit plaintiffs to "audit the payroll books and records, [including all] records which reflect the hours and wages or other compensation of the employees." Knore Decl. ¶ 25; Trust Agreement at 27. Based on the plain terms of the Trust Agreement, plaintiffs have the right to audit defendant's records. Accordingly, the Court orders defendant to produce its books and records for the period in question within thirty days of entry of judgment.

### c.     Underpaid Minimum Annual Contributions

Plaintiffs seek a total of $1,977.37 in underpaid minimum annual contributions for the period beginning January 1, 2013 through December 31, 2013. Knore Decl. ¶¶ 33–34. Pursuant to the Trust Agreement and Rehabilitation Plan to which defendant was bound as result of its CBA, this amount is calculated based on a base contribution rate determined by defendant's contributions for the period from September 1, 2008 through August 31, 2009, which totaled $5,626. Trust Agreement; Knore Decl. ¶¶ 31–32. Because defendant only participated in the Fund for six months in 2013, its minimum contribution for 2013 was pro-rated to $2,813. Knore Decl. ¶ 33. However, defendant only contributed $835.63 in 2013, and therefore underpaid its minimum annual contribution by $1,977.37. Id. ¶ 34. Plaintiffs have provided a detailed written declaration by the Fund's third-party administrator indicating when and by how much defendant underpaid the contributions it had agreed to make under the terms of the CBA. Id. ¶¶ 31-35. The Court finds this declaration sufficient to prove up the amount requested to cure that underpayment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

### d. Interest and Liquidated Damages

Plaintiffs seek prejudgment interest on defendant's withdrawal liability assessment in the amount of $38,486.42, prejudgment interest on the underpaid minimum annual contributions in the amount of $864.44, and $395.48 in liquidated damages.

### 1. MPPAA Withdrawal Liability

Pursuant to 29 U.S.C. § 1399(c)(5), in cases where an employer defaults, plan sponsors are entitled to prejudgment interest on withdrawal liability accruing from the due date of the first payment that was not timely made. Interest is calculated based on prevailing market rates for comparable obligations pursuant to regulations promulgated by the Pension Benefit Guaranty Corporation. 29 U.S.C. § 1399(c)(6). The Fund's administrative office calculates prejudgment interest for each calendar quarter at an annual rate equal to the average quoted prime rate on a short-term commercial loan. Knore Decl., Ex. 3 at 6. Prejudgment interest is calculated from July 17, 2017, the date when defendant defaulted. Knore Decl. ¶ 19. From July 17, 2017 through December 31, 2017, the annual rate was 4.25 percent. From January 1, 2018 through May 15, 2018, when the instant motion was filed, the rate was 4.5 percent. Id. ¶ 21. Pursuant to the Fund's withdrawal liability procedures, interest equals the principal amount multiplied by the annual interest rate multiplied by the time periods involved (calendar quarter, month, or day). Id. ¶ 20.

Using this formula, plaintiffs calculate that prejudgment interest totals $38,486.42. Plaintiffs note that interest will continue to accrue through June 18, 2018, the date of the hearing on the instant motion. Id. ¶ 22. Plaintiffs calculate per diem interest to be $130.96, for a total of $4,452.64 for the period in question. Per their calculations, plaintiffs state that they are entitled to $42,939.06 in total accrued interest on defendant's withdrawal liability. However, using the formula provided by plaintiffs, the Court calculates prejudgment interest on defendant's withdrawal liability to be $38,486.50 and per diem interest to be $132.76. See Knore Decl. ¶ 20. Accordingly, the Court finds that accrued interest for the period from May 15, 2018 to June 18, 2018 is $4,513.84, and total accrued interest is $43,000.12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

### 2. Underpaid Minimum Annual Contributions

Pursuant to plaintiffs' Trust Agreement and 29 U.S.C. § 1132(g)(2), if defendant fails to pay its agreed-upon minimum annual contributions, it is liable for the outstanding balance owed, as well as for interest on delinquent contributions, at a rate of 10 percent per annum. Id. ¶ 36. As discussed above, defendant underpaid for the year 2013 by $1977.37. Plaintiffs state that interest on this amount totals $864.44, at a rate of 54 cents per day for the period beginning January 1, 2014 through May 15, 2018. Id. ¶ 35. Plaintiffs note that interest will continue to accrue through June 18, 2018, and calculate that defendant therefore owes an additional $18.36. Plaintiffs calculate the total interest on defendant's underpaid minimum annual contributions to be $882.80. However, using the formula provided by plaintiffs, the Court calculates prejudgment interest on defendant's delinquent contributions to be $864.08. See Knore Decl. ¶ 36. The Court further calculates accrued interest for the period from May 15, 2018 to June 18, 2018 to be $18.42. Thus, the total accrued interest is $882.50.

The Ninth Circuit has held that an award of liquidated damages pursuant to 29 U.S.C. § 1132(g)(2) is "mandatory and not discretionary." Operating Eng'rs. Pension Trust v. Beck Eng'g. & Surveying Co., 746 F.2d 557, 569 (9th Cir. 1984). A plaintiff is entitled to mandatory liquidated damages if the following requirements are satisfied: (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of the suit; and (3) the plan provides for liquidated damages. Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989). Plaintiffs' Trust Agreement provides for liquidated damages equal to 20 percent of the delinquent contributions. Per plaintiffs, defendant is therefore liable for $395.48 in liquidated damages. However, the Court calculates liquidated damages to be $395.47 based on a rounding error.

### e. Fees and Costs

Plaintiffs request reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(D). Local Rule 55–3 provides that where a statute authorizes an award of attorneys' fees, and the amount in judgment exceeds $100,000, fees are calculated at $5,600 plus two percent of the amount over $100,000. C.D. Cal. L.R. 55–3. Here, based on the Court's calculations, defendant's total delinquency is $1,108,353.46, which is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:18-cv-01602-CAS (AJMx) | Date | June 18, 2018 |
|---|---|---|---|
| Title | GCIU–EMP' RET. FUND AND BD. OF TRS. OF THE GCIU–EMP' RET. FUND v. ABCO PRINTING | | |

comprised of withdrawal liability, underpaid minimum annual contributions, accrued interest, and liquidated damages for all relevant periods up to the date judgment is entered. Thus, attorneys' fees total $25,767.07. In addition, costs total $583. Knore Decl., Ex. 4. Accordingly, plaintiffs are entitled a total amount of $26,350.07 in fees and costs.

## V.     CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiffs' motion for default judgment. Plaintiffs are directed to submit a revised proposed judgment consistent with this Order.

The Court further **ORDERS** that defendant shall submit to an audit pursuant to the terms of the CBA and Trust Agreement for the period beginning April 1, 2010 through June 30, 2013.

IT IS SO ORDERED.

|  | 00 | 01 |
|---|---|---|
| Initials of Preparer | | CMJ |